UNITED STATES of America,
Plaintiff,

v.

ALTON AND SOUTHERN RAILROAD,
Defendant.

UNITED STATES of America,
Plaintiff,

v.

MANUFACTURERS RAILWAY COM-
PANY, Defendant.

UNITED STATES of America,
Plaintiff,

v.

TERMINAL RAILROAD ASSOCIATION
OF ST. LOUIS, Defendant.

Civ. Nos. 4314–4316.

United States District Court
E. D. Illinois.

Dec. 23, 1960.

Clifford M. Raemer, U. S. Atty., East St. Louis, Ill., Henry L. Hilzinger, Attorney, Interstate Commerce Commission, Washington, D. C., for plaintiff.

Kramer, Campbell, Costello & Wiechert, Pope & Driemeyer, East St. Louis, Ill., for defendants.

JUERGENS, District Judge.

This suit was instituted by the United States for statutory penalties under Sections 1 to 16, Title 45 U.S.C.A., commonly referred to as the Safety Appliance Acts.

This opinion is directed to three separate cases, namely: United States of America v. Alton and Southern Railroad, Civil No. 4314; United States of America v. Manufacturers Railway Company, Civil No. 4315; and United States of

America v. Terminal Railroad Association of St. Louis, Civil No. 4316. These three causes were consolidated for trial.

Civil No. 4314 consists of three causes of action, each relating to inspection of power or train brakes, and is based on Section 9, Title 45 U.S.C.A., as amended, and an order of the Interstate Commerce Commission, dated May 1, 1958, and more specifically on Section 132.13(e)(1) of said order. Cause No. 4315 consists of a single cause of action and is based upon the same section of the statute and Interstate Commerce Commission order as is Civil No. 4314. Civil No. 4316 consists of three causes of action and each relates to the same statute and order as Civil No. 4314 and Civil No. 4315.

At the pre-trial conference the Alton and Southern Railroad stipulated that on January 29, 1959, it operated: its transfer train consisting of 97 cars drawn by diesel locomotive engine No. 32; its transfer train consisting of 40 cars drawn by its diesel locomotive engine No. 39; and its transfer train consisting of 73 cars drawn by its diesel locomotive engine No. 32. The Government stipulated that the movement of the three trains did not exceed 20 miles.

The Manufacturers Railway Company at the pre-trial conference stipulated that on January 29, 1959, it operated its transfer train consisting of 11 cars drawn by its diesel locomotive engines Nos. 209 and 210. The Government stipulated that the movement of the train did not exceed 20 miles.

The Terminal Railroad Association of St. Louis at the pre-trial conference stipulated that on January 30, 1959, it operated: its transfer train consisting of 38 cars drawn by its diesel locomotive engine No. 1601; its transfer train consisting of 66 cars drawn by its diesel locomotive engine No. 1602; and its transfer train consisting of 55 cars drawn by its diesel locomotive engines Nos. 569 and 570. The Government stipulated that the movement of the trains did not exceed 20 miles.

At the hearing the parties stipulated that evidence would be presented as to Count II in the Alton and Southern case (Civil No. 4314) and that the evidence in Cause No. 4315 and Cause No. 4316 and each count thereof was substantially the same and should be considered as evidence in each of these causes, except that in the Terminal Railroad Association of St. Louis case (Civil No. 4316) no inspection of the brakes on any of the cars was made by any employee of the railroad after the service brake pipe reduction was made.

Ralph P. Utter, a safety service agent for the Interstate Commerce Commission, testified that he had witnessed the movement of the Alton and Southern train being pulled by locomotive No. 39 on January 29, 1959. He testified that he observed that the train's air brake system was charged by the locomotive; that the caboose pressure indicated 60 pounds and that a reduction was made; that upon reduction a crew member of the Alton and Southern inspected the brakes on the caboose and the two rear cars only; and that no inspection of the remainder of the cars was made.

This witness further testified that it was possible to charge the brake system to indicate a 60 pound pressure in the caboose, effect a 15 pound reduction and not charge the brakes on each of the cars; that it was possible to cut out the brake system on each of the cars individually since each car has a control valve and that if the individual control valves on any given number of cars were cut out, it would have no effect on the remainder of the train's brake system, but the brakes on the car, or cars, on which the control valve was cut out would not operate. He further testified that you cannot determine if the brakes are operating on each car except by visual inspection.

Gary Albert Walker, an agent for the Bureau of Safety Service, Interstate Commerce Commission, testified that he had observed the movement of the Alton and Southern train being pulled by engine

No. 39 on January 29, 1959; that the brake system was charged to indicate 60 pounds pressure in the caboose; that he did not observe whether or not the reduction of 15 pounds was made but that the reduction was sufficient to apply the brakes on the car which he observed. He further testified that charging the brake system to 60 pounds and then effecting a 15 pound reduction would activate the brakes on all the cars if there were no broken lines and provided the individual cutout cocks in the branch line were not in an open position.

William T. Conroy, inspector for the Interstate Commerce Commission, testified that he had made detailed studies of the functions of air brakes on railroad cars; that he had acted as investigator for the Interstate Commerce Commission in relation to power brakes and in such capacity had conducted numerous accident investigations; that he had observed tests of various equipment to determine the braking equipment involved in the accidents which he had investigated; and that by these tests it could be determined whether the equipment was working properly. He testified that the train air line from the locomotive to the caboose could be charged without each of the individual car brake systems also being charged; that various conditions might exist which would prevent the brake system on the individual cars from charging; that if the cutout cocks were closed, or the AB valve failed to work properly, or if the auxiliary resevoir were broken, the brakes on the individual car involved would not be charged and the brakes on that car would not operate.

Section 9 of the Safety Appliance Act, as amended, provides as follows:

"§ 9. Power or train brakes; operation by engineer; rules for installation, inspection, maintenance and repair

"Whenever, as provided in sections 1–7 of this title, any train is operated with power or train brakes not less than 50 per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated; and, to more fully carry into effect the objects of said sections, the Interstate Commerce Commission may, from time to time, after full hearing, increase the minimum percentage of cars in any train required to be operated with power or train brakes which must have their brakes used and operated as aforesaid. One hundred and twenty days after the date of enactment of the Power or Train Brakes Safety Appliance Act of 1958, the Interstate Commerce Commission shall adopt and put into effect the rules, standards, and instructions of the Association of American Railroads, adopted in 1925 and revised in 1933, 1934, 1941, and 1953, with such revisions as may have been adopted prior to the enactment of such Act, for the installation, inspection, maintenance, and repair of all power or train brakes for common carriers engaged in interstate commerce by railroad. Such rules, standards, and instructions shall thereafter remain the rules, standards, and instructions for the installation, inspection, maintenance, and repair of all power or train brakes unless changed, after hearing, by order of the Interstate Commerce Commission: Provided, however, That such rules or standards or instructions or changes therein shall be promulgated solely for the purpose of achieving safety. The provisions and requirements of this section shall apply to all trains, locomotives, tenders, cars, and similar vehicles used, hauled, or permitted to be used or hauled, by any railroad engaged in interstate commerce. In the execution of this section, the Interstate Commerce Commission may utilize the services of the Association of American Railroads, and may

avail itself of the advice and assistance of any department, commission, or board of the United States Government, and of State governments, but no official or employee of the United States shall receive any additional compensation for such service except as now permitted by law. Failure to comply with any rule, regulation, or requirement promulgated by the Interstate Commerce Commission pursuant to the provisions of this section shall be subject to the like penalty as failure to comply with any requirement of this section."

Pursuant to the mandate provided in Section 9 of the Safety Appliance Act the Interstate Commerce Commission promulgated general rules and regulations for the inspection, testing and maintenance of air brake equipment which became effective August 9, 1958.

Section 132.13(e) (1) and (2) of said rules provides as follows:

"(e)(1) Transfer train and yard train movements not exceeding 20 miles, must have the air brake hose coupled between all cars, and after the brake system is charged to not less than 60 pounds, a 15 pound service brake pipe reduction must be made *to determine that the brakes are applied on Each Car before releasing and proceeding.*

"(2) Transfer train and yard train movements exceeding 20 miles must have brake inspection in accordance with § 132.12(a) to (h)." (Emphasis supplied.)

Section 132.12 provides in pertinent parts as follows:

"§ 132.12. Initial terminal road train air brake tests. All trains must be given inspection and tests as specified by paragraphs (a) to (h) of this section * * *

* * * * * *

"(a) Train air brake system must be charged to required air pressure, angle cocks and cutout cocks must be properly positioned, air hose must be properly coupled and must be in condition for service. An examination must be made for leaks and necessary repairs made to reduce leakage to a minimum. Retaining valves and retaining valve pipes must be inspected and known to be in condition for service. * * *

"(b)(1) After the air brake system on a freight train is charged to within 15 pounds of the setting of the feed valve on the locomotive, but to not less than 60 pounds, as indicated by an accurate gauge at rear end of train, * * * and upon receiving the signal to apply brakes for test, a 15 pound brake pipe service reduction must be made in automatic brake operation, the brake valve lapped, and the number of pounds of brake pipe leakage per minute noted as indicated by brake pipe gauge, after which brake pipe reduction must be increased to full service. Inspection of the train brakes must be made to determine that angle cocks are properly positioned, that the brakes are applied on each car, that piston travel is correct, that brake rigging does not bind or foul, and that all parts of the brake equipment are properly secured. When this inspection has been completed, the release signal must be given and brakes released and each brake inspected to see that all have released. * * * *"

Section 132.13(e)(1) does not specifically state that a visual inspection of each car is required in movements under 20 miles, while Section 132.12 (which is concerned with movements of more than 20 miles) provides for activating the brake system to not less than 60 pounds on freight trains, a reduction of 15 pounds and in addition requires visual inspection.

Inspection under Section 132.12 requires inspection of the train brakes to determine: (1) that angle cocks are properly positioned; (2) that the brakes are applied on each car; (3) that the piston travel is correct; (4) that brake rigging does not bind or foul; and (5) that all parts of the brake equipment are properly

secured. When the inspection is completed, then the release signal must be given and brakes released and an inspection is then required to see that all of the brakes have in fact released.

The defendants contend that when the brake system on the train, or trains, involved was charged to 60 pounds and a 15 pound brake pipe service reduction was made, the requirements of the Interstate Commerce Commission rules for movements of trains under 20 miles were met. In their brief the defendants state:

"The failure to prescribe inspection of brakes preliminary to transfer train movements not exceeding 20 miles cannot be dismissed as insignificant, nor can the Court extend the meaning of this provision beyond the plain import of its equivocal language. To do so would be a usurpation of the legislative prerogative and not the exercise of the judicial function. The Court can neither add to or subtract from the result of the legislative process. If legislation as enacted fails to establish standards which plaintiff or its counsel believes might have been wise, the Court cannot change the legislative prescriptions under the pretense of interpretation."

The defendants assert that if a visual inspection were required the Commission would have said so in the order and point to Section 132.13(e)(2), which requires a visual inspection for movements of trains exceeding 20 miles.

The Government contends that visual inspection of the brakes on each car is required by the rules and in support of its contention points to the final wording of Section 132.13(e)(1) which provides " * * * to determine that the brakes are applied on each car * * * " and further points out that all the evidence introduced was to the effect that charging the brake system as required, followed by the prescribed reduction, does not necessarily activate the brakes on each car and that visual inspection is the only means by which it can be determined that the brakes are applied on each car.

The contentions and theories proffered by the defendants would be correct if the gauge on the caboose would not operate unless the brake system on each car was charged and working as prescribed by law and the rules, for then it could be determined that the brakes on each car were operating from a mere inspection of the gauge on the caboose. The fact that the brakes are known to function on one car does not give any information as to whether the brakes are functioning on any of the other cars. The brakes on any given car may fail to function because of any one of several reasons, such as the brakes may be cut out, certain pipes may be broken, or the control valve may be inoperative for various reasons. The charging of the system as required, followed by a subsequent reduction as specified in the rules, does not necessarily disclose that the brakes are operating on each car since the functioning of the air brake on one car is independent of the functioning of the brake on any of the other cars.

The testimony showed and the Court finds that the only method by which it can be determined that the brakes are in fact operating on Each Car is by visual inspection after the reduction has been made and, since the rule here under consideration states that the procedure must be followed to determine that the brakes are applied on Each Car before releasing and proceeding and since according to the evidence the only method by which it may be determined that the brakes are in fact applied on Each Car is by visual inspection, nothing short of a visual inspection would meet the requirement of the statute.

The purpose of the Safety Appliance Acts is to promote the safety of employees and travelers in connection with railroad operations, and the Safety Appliance Acts and the Interstate Commerce Commission Orders adopted pursuant to such acts must be liberally construed to effect their purpose. The Safety Appliance Acts should be liberally construed as a safety measure. United States v. Sea-

board Air Line R. Co., 1959, 361 U.S. 78, 80 S.Ct. 12, 4 L.Ed.2d 25. Accordingly, the Court finds that the defendants violated Section 9 of the Safety Appliance Act in failing to visually inspect the brakes on each car after having charged the line to 60 pounds, followed by a 15 pound reduction.

The above and foregoing shall be considered findings of facts and conclusions of law.